Richard J. BROOKS, a citizen, et al.,
Plaintiffs,

v.

John A. VOLPE, as Secretary of the United States Department of Transportation, et al., Defendants.

No. 9144.

United States District Court,
W. D. Washington,
at Seattle.

Aug. 30, 1972.

Slade Gorton, Atty. Gen., Thomas R. Garlington, Asst. Atty. Gen., Olympia, Wash., for State defendants.

Stan Pitkin, U. S. Atty., Albert E. Stephan, Asst. U. S. Atty., J. Richard Aramburu, Seattle, Wash., for plaintiffs.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEEKS, Chief Judge.

This matter having come on regularly for hearing on the 18th day of August, 1972, pursuant to an order of this Court directing defendants herein to show cause why further construction on the section of I–90 from Asahel Curtis Interchange to Snoqualmie Summit should not be enjoined until they have complied with the directives of this Court contained in its opinion filed herein on the 4th day of August, 1972. 350 F.Supp. 269. This Court having considered the files and records herein and the affidavits filed by defendants pursuant to the order to show cause; to wit, the Affidavit of William I. Hordan dated August 17, 1972; Affidavit No. 1 of Kenneth E. Wheeler dated August 17, 1972; Affidavit No. 2 of Kenneth E. Wheeler dated August 17, 1972; Affidavit of Orvis Lauritzen dated August 17, 1972, and the Affidavit of Irvin C. Lloyd dated August 16, 1972, and having considered the testimony of George H. Andrews, Director of Highways, and Kenneth E. Wheeler, and having considered the memoranda of the parties filed herein in connection with the show cause hearing, and having considered the oral argument of counsel and being fully advised in the premises now makes the following

## FINDINGS OF FACT

1. Four contracts have been let for work on I–90 from Asahel Curtis Interchange to Summit of Snoqualmie Pass, consisting of Contract 8844 for construction of the Franklin Falls bridge; Contract 8916 for the construction of the Upper Snoqualmie River bridge; Contract 9092 for clearing and grading of the west bound lanes from Asahel Curtis Interchange to Denny Creek, together with the Asahel Curtis Interchange structures and the Denny Creek bridge; and Contract 9366 for foundation exploration in the Franklin Falls vicinity.

2. The expenditure for work performed to date and the amount of work completed on the above contracts is as follows:

| Contract | Payments to Contractor | Construction Engineering | % of Work Complete |
|---|---|---|---|
| 8844 | $2,300,000 | $160,000 | 95 |
| 8916 | 575,000 | 77,000 | 70 |
| 9092 | 3,625,000 | 435,000 | 31 |
| 9366 | –0– | –0– | 0 |
| | $6,500,000 | $672,000 | |
| Right of Way Expenditure | | $605,400 | 88 |
| Preliminary Engineering | | $1,002,100 | 95 |
| Total Expenditure to Date | | $8,779,500 | |

Exhibits B–1 through B–7 inclusive, aerial photographs of the section of highway taken August 14, 1972, and exhibits B–8 through B–44 photographs taken August 11, 1972, on the ground accurately depict the advanced stage of construction of the west bound lanes of the section of highway. The work between the Asahel Curtis Interchange and the end of the grading at a point where the Denny Creek bridge will commence has resulted in substantially all of the clearing, excavation and grading that will be required for that section of highway and additional work will not cause further significant scarring of the mountain side. The contract for construction of the highway from Asahel Curtis Interchange to Denny Creek provides for covering rock embankments with top soil, both on the new alignment and on the existing I–90 alignment. The contract further provides for seeding and planting the embankment and slopes thus covered by top soil which will reduce the existing scarring along both the new highway lanes and the existing I–90 lanes.

3. The contractors performing the four contracts identified in the Findings of Fact, section 1, hereinabove have furnished estimates of their losses which would arise from an immediate injunction stopping work on the project for which claims would be made against the

Department of Highways. These estimates are as follows:

| Contract | | |
|---|---|---|
| 8844 | Franklin Falls Bridge | $ 147,800 |
| 8916 | Upper Snoqualmie River Bridge | 254,900 |
| 9092 | Asahel Curtis Interchange to Denny Creek | 1,166,000 |
| 9366 | Foundation Exploration— Franklin Falls Vicinity | 18,000 |
| | | $1,586,700 |

These estimated claims for losses appear to be reasonable in the light of the size and nature of the contracts.

4. In the event an injunction were to stop work on this highway project, the following construction workers and highway department personnel would be discharged as a direct result:

| Contract | | Men Released |
|---|---|---|
| 8844 | Franklin Falls Bridge | 22 |
| 8916 | Upper Snoqualmie River Bridge | 25 |
| 9092 | Asahel Curtis Interchange to Denny Creek | 200 |
| 9866 | Foundation Exploration— Franklin Falls Vicinity | 20 |
| | State Highway Personnel | 25 |
| | | 292 |

6. In the event work on this highway project were closed by injunction at this time, considerable erosion would occur through the coming winter, which will be avoided if work continues through the balance of the construction season and the work is properly closed down to protect against wind and water erosion during the winter and spring. A detour depicted in Exhibit B–24 required during the construction of a structure which will become a part of the Asahel Curtis Interchange will constitute an extremely hazardous condition during the winter months if work is suspended by an injunction at this time, whereas if work can continue for the balance of the construction season the bridge structure will be completed and the detour eliminated prior to the onset of winter weather, thereby greatly reducing the possibility of accidents.

8. Contract 9366 for foundation exploration in the vicinity of Franklin Falls will provide subsurface information necessary to complete the foundation design for a forthcoming contract for gabion walls between the Denny Creek structure and Franklin Falls structure and information to design avalanche defense works to protect the Franklin Falls structure. Ten test holes and three test pits provided for in said contract are necessary to provide this information. A report on exploratory foundation work under Contract 9366 filed by the Department of Highways in accordance with the direction of this Court states that helicopters will be used to move the steel liner plate and smaller mechanical equipment into three test pits in order to avoid the necessity of constructing an access road to the pits. However, the report states that due to the excessive weight of the drilling equipment, it is not possible to lift that equipment by helicopter. The report proposes that the air track drill rig can be lifted off the west end of the Franklin Falls bridge by crane and winched down the slope to test hole No. 1 location. The air track drill rig can then negotiate on its tracks the 1,300 feet to the west to accomplish the drilling of the seven test holes, all as shown in Exhibit 1 of the report. The drill rig will be able to negotiate this distance on a primitive type trail which will closely conform with the natural slope with the larger obstructions removed so that the tracked vehicle will not drag bottom or high-center. Some shaping of the ground may be necessary in the immediate vicinity of the test holes to accomodate the drilling equipment. The width of the primitive trail would be no wider than ten to twelve feet and would not be of the type that a wheeled vehicle could negotiate. A similar provision will be made to move the drill rig to test holes 8, 9 and 10 as shown on Exhibit 1 to the report. The provisions for the exploratory foundation work under Contract 9366 as outlined in the report are reasonable and will result in a minimum disturbance of the natural environment.

9. The Washington State Department of Highways, even prior to the de-

cision of the Ninth Circuit Court of Appeals in this case dated March 2, 1972, had commenced the preparation of a formal Draft Environmental Impact Statement. Upon receipt of the opinion of the Ninth Circuit Court requiring the filing of an Environmental Impact Statement and compliance with Section 4(f) (Title 23 U.S.Code, § 138) within a 60-day period, the department made a good faith effort to comply. This included the convening of a meeting of the regional heads of the Bureau of Outdoor Recreation, Department of Interior; Department of Housing and Urban Development; United States Forest Service; Regional Representative of the Secretary of Transportation; and the County Executive for King County, for the express purpose of expediting the review and approval of the 4(f) Statement prepared by the Department of Highways in order to comply with the deadline imposed by the Ninth Circuit Court. In order to provide time for review of the Environmental Impact Statement and 4(f) Statement at the Washington, D. C. level, both statements were transmitted to the Federal Highway Administration on April 5, 1972. Final approval by the Department of Transportation of the statements was granted April 25, 1972, and the Environmental Impact Statement was filed with the Council on Environmental Quality on that date.

## CONCLUSIONS OF LAW

1. From the foregoing Findings of Fact, the Court makes these Conclusions of Law, having in mind the mandate of the court of appeals to this court in Brooks et al. v. Volpe et al., 460 F.2d 1193, 1194 (9th Cir. 1972), stating:

The judgment is reversed and the cause is remanded to the district court with directions to retain jurisdiction for such review as may be appropriate after the environmental-impact statement is filed. The district court shall make the necessary orders, and shall enjoin further construction if there has not been full compliance with the controlling legislation within sixty days of the entry of our judgment herein [extended until June 15, 1972, by an order of the court of appeals filed May 8, 1972]. If such an injunction is entered pursuant to this direction, it shall be vacated if and when there is such full compliance.

2. The court should enjoin all further activity which would increase the environmental damage already done. It is not yet too late for highway planners to administratively choose a different route. Contracts yet to be let include those for paving. Such contracts if let and performed would make selection of another route virtually impossible. The letting of all further contracts, and the work to be performed thereunder, should therefore be enjoined.

3. For the following reasons, work on contracts 8844, 8916, 9092 and 9366 should not be enjoined:

a. Since the filing of the opinion of the court of appeals, additional blasting and grading have cleared much vegetation from the proposed route. Most of the scarring of the landscape which would result from completion of the entire project has now been completed. An injunction stopping further work on the contracts which have been let for this project would not significantly prevent further defacing of the environment.

b. Severe public injury would result from a blanket injunction. Additional harm to the environment, such as erosion and land slides during the winter season, would enlarge the existing scars on the land and make them more difficult to eradicate. Seeding and planting of vegetation on exposed earth embankments to ameliorate existing defacement of the environment would be prevented. Contractors would file claims against the State for substantial losses caused by the injunction. Nearly 300 persons would lose their jobs.

c. Defendants made a good faith effort to comply with the applicable statutes and the order of the court of appeals.

d. The additional work allowed by this court is not of a nature which would significantly influence the final decision on whether to alter the route of the new addition to the highway.

4. Work on Contract 9366, relating to foundation exploration in the Franklin Falls vicinity, should be accomplished as outlined in the "Report on Exploration Foundation Work, Denny Creek to Denny Creek Road, Contract 9366," filed herein by defendants.